In the Matter of GERALD STERN, Petitioner, v GORDON AMBACH, as Commissioner of Education of the State of New York, et al., Respondents.

Third Department, May 28, 1987

---

## APPEARANCES OF COUNSEL

*Arthur R. Block* for petitioner.

*Robert Abrams, Attorney-General (John J. O'Grady* of counsel), for respondents.

## OPINION OF THE COURT

YESAWICH, JR., J.

Petitioner, licensed to practice dentistry since 1960, was ultimately found guilty of professional misconduct—billing improprieties—on May 2, 1980. As a consequence, his license was suspended for an initial period of six months, which commenced December 18, 1980 and ended June 17, 1981, after which a three-year period of probation, scheduled to end on June 16, 1984, began.

Petitioner apparently vacated his office in Brooklyn in October 1980, left the State in November and then moved to California, where he purportedly did not practice dentistry. Thereafter, on July 8, 1983, new charges of professional misconduct together with a notice of hearing to be held July 27, 1983 were served on petitioner at his San Diego, California, address; petitioner acknowledges their receipt. These charges contained, *inter alia,* specifications of gross incompetence as well as professional misconduct stemming from his treatment of two patients, Rona Thompson and Carmen Rubildo, in 1977 and 1979, respectively, and for violating the terms of his probation by failing to produce, upon request, the records of these patients, and moving his practice without notifying respondent Department of Education, as he was required to do.

Responding to the papers served upon him, petitioner obtained an adjournment of the scheduled hearing, sought and was furnished copies of written expert opinions supporting the Department's charges and then, in a letter dated September 9, 1983, wrote the Department that the gravity of the charges

was such that a submitted written defense would be inadequate, and prayed that no hearing be held in his absence. In this same letter, petitioner noted that in a week's time he was leaving San Diego and moving to either San Francisco or Los Angeles, and represented that he would contact the Department as soon as he had a mailing address and telephone number; respondents maintain petitioner neglected to do this.

Thereafter, a letter dated October 17, 1984, was sent by certified mail to petitioner advising that a hearing on the pending charges was scheduled to be held November 14, 1984. Owing to an error in handling, admittedly committed by the United States Postal Service, petitioner never received this letter. The hearing was held as scheduled. Petitioner, having failed to receive notice, was neither present nor represented by counsel.

On January 1, 1985, the Hearing Panel issued its report, which found petitioner guilty of gross incompetence in the treatment of Thompson, guilty of violating the terms of his probation and not guilty of the other charges. Revocation of petitioner's license was recommended. A copy of the report, sent to petitioner by regular mail at his San Diego address on January 4, 1985, was forwarded to petitioner's new address. In a letter to the Department dated January 15, 1985, petitioner indicated he had not received notice of the hearing and requested an opportunity to be heard. At this time, petitioner provided the Department with his new address in Reseda, California.

By letter dated February 22, 1985, the Department informed petitioner that his case was currently pending before the Regents Review Committee (RRC) and that its review of the matter had been adjourned for his convenience until April 3, 1985; formal notice of the upcoming review had been sent two days earlier. At the hearing before the RRC, which was eventually held in June 1985, petitioner neither appeared nor was he represented by counsel. He did, however, submit an extensive written defense with exhibits which the RRC considered before unanimously recommending that the Board of Regents adopt the Hearing Panel's findings and recommendation in their entirety. The Board of Regents voted thereafter to accept the recommendation of the RRC and, acting thereon, respondent Commissioner of Education ordered petitioner's license revoked.

The instant CPLR article 78 proceeding ensued. A subse-

quent motion by respondents, occasioned by this court's decision in *Matter of Libra v University of State of N. Y.* (124 AD2d 939), to have this matter remitted for further proceedings was denied on February 2, 1987.

At the threshold, petitioner maintains that his failure to receive notice of the November 14, 1984 hearing, stemming from the Postal Service's oversight, amounted to a denial of due process. We disagree.

Petitioner was on probation for previous misconduct at the time this letter was sent. The terms of probation were perfectly clear in that they required petitioner to "submit written notification to the Department, addressed to the Director, Division of Professional Conduct, 622 Third Avenue, New York, N.Y., 10017 of any employment and practice, of his residence, and of any change in his employment, practice or residence within or without the State".

Under the terms of his probation, petitioner had an affirmative responsibility to keep the Division of Professional Conduct not the United States Postal Service, aware of his address. Irrespective of whether he was practicing dentistry, petitioner had a continuing duty to ensure that the Department knew his location; without information as to petitioner's whereabouts, the Department could not effectively supervise his probation. Inasmuch as petitioner's failure to receive notice of the adjourned hearing can be traced to his inability to discharge this obligation, it cannot be said that he was denied due process, which requires " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action' " *(Silverstein v Minkin,* 49 NY2d 260, 263, quoting *Mullane v Central Hanover Trust Co.,* 339 US 306, 314).

This conclusion is further buttressed by the fact that Education Law § 6502 (5) required petitioner to notify the Department of "any change of name or mailing address within thirty days of such change". This was not done. To equate the postal authority's inadvertence with a denial of due process is to ignore petitioner's cavalier approach to his need to satisfy the terms of his probation and to meet his statutory duty.

Parenthetically, we find no merit in petitioner's argument that his failure to advise of his change of address was not a violation of his probation inasmuch as it occurred *prior* to the commencement of his probation, namely, while he was suspended. To suggest that the terms of probation were in effect

only during the probationary period, but that while he was on suspension he was subject to lesser restrictions, is simply untenable. Furthermore, as noted, his statutory duty pursuant to Education Law § 6502 (5) was a continuing one with which he neglected to comply.

Under the guise of newly discovered evidence, petitioner would have us evaluate assorted technical material not considered by the Hearing Panel. Of moment are two affidavits indicating the absence of a causal relationship between petitioner's work and the difficulties his patients ostensibly underwent. Though empowered to make an exception to the general rule precluding such review, we decline to do so (Matter of Jennings v Coughlin, 99 AD2d 635, 636). Rather, in deference to the expertise of the Hearing Panel, we refer this material to it for its review for the following reasons.

The hearing before the Panel was held November 14, 1984, and its formal written determination was rendered on January 1, 1985. In between these dates, on December 21, 1984, the Legislature heightened the applicable standard of proof so as to require proof of guilt by a "preponderance" rather than merely by "substantial evidence" (L 1984, ch 1005, amdg Public Health Law § 230 [10] [f]; L 1984, ch 1018, amdg Education Law § 6510 [3] [c]). And in Asman v Ambach (64 NY2d 989, 990), the Court of Appeals made it apparent that the preponderance of evidence standard is applicable to the circumstances presented here, stating "amendments to Education Law § 6510 were to take effect immediately and would apply 'to proceedings in which a notice of hearing has been served on the licensee * * * prior to the effective date of such [amendments]' " (supra, at 990, quoting L 1984, chs 1005, 1018). Remittal is therefore necessary for the purpose of having the Hearing Panel reconsider this matter under the preponderance of the evidence standard (see, Matter of Libra v University of State of N. Y., supra).

While we declined petitioner's invitation to review the expanded record before us, we do not impose this limitation on remittal. Rather, we direct the Hearing Panel to review the entire record as expanded and, if the Panel deem that further fact-finding hearings are necessary, it is at liberty to conduct them.

We do not pass on the merits of any of the other points raised by the parties.

MAHONEY, P. J. (concurring in part and dissenting in part).

In my view, the determination under review should be annulled and the matter remitted for a full hearing. There is no question that petitioner failed to receive notice of the hearing due to an error by the Postal Service. I agree with the majority that petitioner could have been more diligent in keeping respondent Department of Education apprised of his current address, as was required by the terms of his probation. However, petitioner did inform the Department that he was planning to move and asked that no hearing be held in his absence. Further, petitioner left a forwarding address with the Postal Service, which should have assured receipt of the notice of hearing. Finally, the Department was made aware of the fact that petitioner had not been notified of the scheduled hearing a mere two or three weeks after the Hearing Panel issued its decision, and prior to submission to the Regents Review Committee. It would not have been any great inconvenience for the hearing to have been rescheduled at that point. This case involves a man being deprived of his license to practice his profession and his means of livelihood. To deprive him of his right to be heard based on the circumstances herein amounts to a denial of due process.

MAIN, MIKOLL and HARVEY, JJ., concur with YESAWICH, JR., J.; MAHONEY, P. J., concurs in part and dissents in part in an opinion.

Determination annulled, without costs, and matter remitted to respondents for further proceedings not inconsistent herewith.